IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLEKSANDRA SHALAK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 24-cv-03941 |
| CITY OF CHICAGO and CHICAGO TREASURER, MELISSA CONYEARS-ERVIN, | ) ) ) ) Judge Joan H. Lefkow |
| Defendants. | ) ) ) |

**OPINION AND ORDER**

Oleksandra Shalak brings this action against the City of Chicago (the "City") and Melissa Conyears-Ervin for terminating her employment in violation of 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and Illinois common law. (Dkt. 11 ¶ 1.)[1] Shalak brings claims of sex discrimination (Counts I and III), national origin discrimination (Counts II and IV), and race, ethnicity, and ancestry discrimination (Count V). She also alleges that defendants unlawfully retaliated against her by terminating her employment. (Counts VI, VII, VIII, and IX). Defendants move to dismiss Counts III, IV, V, VIII, and IX of Shalak's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 25.) For the reasons stated below, the court grants defendants' motion in part and denies it in part.

---

[1] Jurisdiction is proper under 28 U.S.C. §§ 1343(a)(2) and 1367. Venue is proper under 28 U.S.C. § 1391(b).

## **BACKGROUND**[2]

Shalak, a Ukrainian-born woman, began working for the City in February 2016. The City promoted her "several times and consistently awarded her merit pay raises." (Dkt. 11 ¶ 12.) Shalak worked as an Executive Administrative Assistant from February 2016 to February 2017. She then served as a Portfolio Manager on the Investments Team until October 2021 and became Assistant City Treasurer until her termination in April 2023. While employed with the City, Shalak's "job performance met or exceeded … legitimate expectations." (*Id.* ¶ 12.)

As Assistant City Treasurer, Shalak also worked as "Director of Strategic Alliances and Partnerships" within the Diversity, Equity, and Inclusion ("DEI") department. (*Id.* ¶ 13.) Shalak reported to DEI Chief Robye Scott, but City Treasurer Conyears-Ervin maintained "managerial authority and control over [Shalak's] employment." (*Id.* ¶¶ 9, 13.)

From November 2021 to July 2022, Shalak suffered from pregnancy complications including severe morning sickness, deep vein thrombosis, hyperemesis gravidarum, and gestational diabetes. She notified the City's Disability Office and asked to work from home. The City denied this request "and then continued to … refuse to allow her to work from home through to February 2022, and only after requiring her to repeatedly … submit the same supporting medical records and information." (*Id.* ¶ 19.) The City also mandated several meetings where Shalak's "private health information was shared with others who had no legitimate reason to know." (*Id.*) In March 2022, Shalak submitted a formal written complaint with the City's Diversity and Equal Employment Opportunity Office, alleging pregnancy discrimination, disability discrimination, and failure to accommodate her disability. In July 2022, Shalak delivered her child and took leave from work pursuant to the Family and Medical Leave

---

[2] The court only includes allegations that are relevant to defendants' motion to dismiss. Shalak's well-pleaded allegations are accepted as true. *Chaidez* v. *Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019).

Act, followed by a "disability leave of absence." (*Id*. ¶ 21.) She returned to work in October 2022.

In February 2023, Shalak was called into a meeting with Conyears-Ervin and Scott to discuss the Treasurer's goals for the year. Conyears-Ervin requested that Shalak "solicit Broker-Dealers for sponsorship money for a full day summit … put on by the Treasurer's Office." (*Id*. ¶ 24.) The Treasurer's Office "selects and works with a number of Broker-Dealers to facilitate investment transactions." (*Id*. ¶ 15.) Conyears-Ervin stated that Shalak should involve Craig Slack, Chief Investment Officer of the Treasurer's Office, when requesting funds.

Shalak replied to Conyears-Ervin that, "because the Treasurer's Office selects Broker-Dealers to invest and manage the City's investment portfolio," the requested solicitations would present a conflict of interest. (*Id*. ¶ 25). Conyears-Ervin told Shalak that "Broker-Dealers are comfortable [making] such contributions to a Treasurer's Office event." (*Id*.) Conyears-Ervin also said that, as part of the solicitation efforts, Shalak "can use her existing relationships with Broker-Dealers from her work as part of the investments team." (*Id*. ¶ 24.) At the time, however, Shalak's job involved "very little contact or interaction with Broker-Dealers." (*Id*. ¶ 27.)

After her meeting with Conyears-Erwin, Shalak met Slack in his office and informed him that "she was not comfortable soliciting funds from Broker-Dealers as requested, and that she would not do it." (*Id*. ¶ 28.) Slack responded that he was also uncomfortable with the request and suggested that Shalak contact Human Resources. Shalak decided not to contact HR because she knew of other Treasurer's Office employees whom Conyears-Erwin retaliated against after they complained about similar unethical or illegal work directives. Shalak refused to perform any solicitation efforts requested by Conyears-Ervin.

On April 24, 2023, Amanda Brown, the Treasurer's Office Director of HR, notified Shalak that her position would be transferred to a new employee on April 28 and "that [Shalak] could apply for a lesser, non-comparable job in a different department that paid significantly less." (*Id*. ¶ 32.) Two days later, Brown provided Shalak with a letter of resignation, but Shalak refused to sign it or resign. On April 28, Brown emailed Shalak a termination letter, effective that day, with no reasons stated. Conyears-Ervin "made and/or approved" the decisions to transfer Shalak, present her the resignation letter, and terminate her. (*Id*. ¶ 36.)

Defendants "have treated similarly situated male employees, non-pregnant employees, and/or employees who had not engaged in legally protected activity more favorably than [Shalak]." (*Id*. ¶ 37.) Indeed, defendants replaced Shalak with "one or more" such individuals. (*Id*. ¶ 38.) Shalak filed this action on May 14, 2024 (dkt. 1) and amended her complaint on July 21, 2024. (Dkt. 11.)

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court draws all reasonable inferences in Shalak's favor. *See Taha* v. *Int'l Bhd. Of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

**DISCUSSION**

I.     Sex Discrimination – 42 U.S.C. § 1983 (Count III)

Shalak alleges that defendants unlawfully terminated her employment "because of her gender" in violation of the Equal Protection Clause of the Fourteenth Amendment. (Dkt. 11 ¶¶ 48–49.) Defendants move to dismiss Shalak's sex discrimination claim against both Conyears-Ervin and the City.

    A. Conyears-Ervin

At the outset, defendants contend that Shalak's failure to specify whether Conyears-Ervin is named in her individual or official capacity requires dismissal of any claim for her personal liability. Courts ordinarily construe a Section 1983 complaint "that fails to specify the capacity in which the defendants are being sued … to be against them in their official capacity." *Stevens* v. *Umsted*, 131 F.3d 697, 706 (7th Cir. 1997). Nevertheless, this fact "is not conclusive." *Id.* at 707. The court maintains "discretion to interpret a claim as against an official in his or her individual capacity if the actions of the parties … demonstrate that they assume this to be the case." *Nanda* v. *Bd. of Trs. of the Univ. of Ill.*, 219 F. Supp. 2d 911, 915 (N.D. Ill. 2001); *Stevens*, 131 F.3d at 707 ("A court must … consider the manner in which the parties have treated the suit.") (quotation omitted).

That is the case here. If Shalak sued Conyears-Ervin solely in her official capacity, naming both her and the City as defendants would be "redundant." *See Sacks* v. *Niles Tp. High Schools, Dist. 219*, No. 12 C 4554, 2013 WL 3989297, at *3 (N.D. Ill. Aug. 2, 2013) (dismissing claim against a district agent in his official capacity because it was "identical" to the claim brought against the district); *see also Stevens*, 131 F.3d at 707 (construing claim against defendant in his individual capacity because defendant raised qualified immunity defense, which

5

"is applicable only in individual capacity suits"). Moreover, in all relevant filings, the parties extensively briefed the merits of Conyears-Ervin's individual liability. The court, in its discretion, interprets Count III as against Conyears-Ervin in her individual capacity.[3]

Defendants next contend that Conyears-Ervin should be dismissed from Count III because she was not personally involved in the alleged discrimination and lacked the requisite intent. "Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody* v. *Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018) (quotation omitted). A plaintiff "must allege 'a causal connection between (1) the sued officials and (2) the alleged misconduct.'" *Washington* v. *Bd. of Educ.*, No. 21 C 396, 2021 WL 5881682, at *5 (N.D. Ill. Dec. 8, 2021) (quoting *Colbert* v. *City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017)). Personal involvement "requires specific intent to discriminate." *Id.* (quoting *Taylor* v. *Ways*, 999 F.3d 478, 494 (7th Cir. 2021)).

Shalak alleges that Conyears-Ervin, in her managerial role, "made and/or approved" the decisions to transfer Shalak's position to another employee, offer her a resignation letter, and terminate her after she refused to sign. (Dkt. 11 ¶¶ 9, 36.) Conyears-Ervin also replaced Shalak with one or more males and treated them more favorably. Moreover, Conyears-Ervin "intentionally terminated [Shalak's] employment because of her gender" and "knew … or acted with reckless disregard" of the fact that her actions were unlawful. (*Id.* ¶¶ 49–51.)

These allegations are sufficient to infer Conyears-Ervin's personal involvement in the alleged sex discrimination. *See Washington*, 2021 WL 5881682, at *6 (concluding that the plaintiff sufficiently alleged defendant's personal involvement where they "approved and agreed

---

[3] Shalak has represented that she intends to amend the Amended Complaint to "make clear" that Conyears-Ervin is sued in *both* her individual and official capacities with respect to Counts III and IV. (Dkt. 31 at 1–2.) Any claim against Conyears-Ervin in her official capacity would be redundant to Shalak's claim against the City, however, and likely faces dismissal. *Sacks*, 2013 WL 3989297, at *3.

6

to terminate [him] …. on the basis of [his] sex" and, "[h]ad a female coach sent the identical texts[,] … she would not have been removed"); *McQueen* v. *City of Chi.*, 803 F.Supp.2d 892, 901 (N.D. Ill. 2011) (denying motion to dismiss Section 1983 claims for lack of personal involvement where defendants allegedly "were … involved in the decision-making process" for discipline). The court therefore denies defendants' motion to dismiss Count III as to Conyears-Ervin.

### B. Municipal Liability

Defendants next argue that Shalak fails to state a sex discrimination claim under Section 1983 against the City. "A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas* v. *Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

To state a claim for municipal liability, a plaintiff must allege "a general pattern of repeated behavior," rather than just a "mere isolated event." *David* v. *Carter*, 452 F.3d 686, 694 (7th Cir. 2006). "Boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient." *McTigue* v. *City of Chicago*, 60 F.3d 381, 382–83 (7th Cir. 1995). Nevertheless, "federal courts may not apply a 'heightened pleading standard' … in civil rights cases alleging municipal liability." *White* v. *City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman* v. *Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). Rather, a *Monell* claim "must simply set forth

7

sufficient allegations to place the court and defendants on notice of the gravamen of the complaint." *Latuszkin* v. *City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001).

Defendants contend that Shalak's Amended Complaint is "completely devoid" of factual allegations suggesting a policy or practice of sex discrimination. (Dkt. 26 at 6.) To the contrary, Shalak has "detail[ed] both the nature of the alleged unconstitutional policy and the circumstances of its application to [her]." *Stokes* v. *Ewing*, No. 16 C 10621, 2017 WL 2224882, at *3 (N.D. Ill. May 22, 2017). She alleges that Conyears-Ervin acted "in accordance with the policy and practice of Chicago's Treasurer's Office" when she made or approved the decision to transfer Shalak's position, offer her a resignation letter, and terminate her employment after Shalak refused to sign the letter. (Dkt. 11 ¶ 36.) Shalak further alleges that defendants terminated her employment "because of her gender," replaced her with a male or non-pregnant person, and treated such persons more favorably. (*Id.* ¶¶ 37–38, 49.)

Shalak alleges a multi-step practice of forcing out employees, along with facts suggesting that defendants carried out this practice based on her sex. The Amended Complaint is therefore not so "boilerplate or short on unique facts" that defendants "can be said to lack notice" of the alleged unconstitutional conduct. *Stokes*, 2017 WL 2224882, at *3; *see also Zinn* v. *Village of Sauk Village*, 16 CV 3542, 2017 WL 783001, at *7 (N.D. Ill. Mar. 1, 2017) (denying motion to dismiss *Monell* claim alleging that plaintiff was harmed "pursuant to [defendant's] widespread practice of illegally and unconstitutionally seizing private property").

Defendants relatedly argue that Shalak fails to identify other instances of sex discrimination by the City.[4] They contend that courts "regularly dismiss *Monell* claims where the

---

[4] Shalak counters, in part, that "the Chicago Tribune has published several articles" detailing similar misconduct. (Dkt. 31 at 4.) Although Shalak failed to reference the articles in her complaint, they are appropriately considered here. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent

8

plaintiff has failed to allege instances other than that from which [the plaintiff] suffered." (Dkt. 26 at 5) (quoting *Petropoulos* v. *City of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. 2020) (citation omitted)). In *White*, 829 F.3d at 844, however, the court emphasized that a plaintiff is "not required to identify every other or even one other individual" who had been harmed "through the complained-of process." Courts following *White* have therefore "'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." *Brainer* v. *Dart*, No. 16 CV 6013, 2018 WL 1519154, at *7 (N.D. Ill. Mar. 28, 2018) (quoting *Stokes*, 2017 WL 2224882, at *4) (collecting cases).[5] Shalak's allegations suffice for this purpose.

At this stage, Shalak "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists." *Zinn*, 2017 WL 783001, at *7 (quoting *Barwicks* v. *Dart*, No. 14-CV-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016)) (emphasis in original). Because Shalak pleads a constitutional violation "in accordance with [the City's] policy and practice," (dkt. 11 ¶ 36), she has stated a *Monell* claim. *See Zinn*, 2017 WL 783001, at *7. The court therefore denies defendants' motion to dismiss Count III against the City.[6]

---

with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved … would entitle him to judgment."). Even so, the articles do not assist her. While they describe lawsuits involving female whistleblowers terminated from the Treasurer's Office, they contain no allegations of sex discrimination.

[5] The court finds defendants' discussion of *Hankle-Sample* v. *City of Chicago*, No. 20-CV-1997, 2021 WL 4461557 (N.D. Ill. Sept. 29, 2021) similarly unpersuasive, as it fails to address the pleading standard set forth in *White*. In requiring plaintiff to allege a "series of constitutional violations," *id.* at *12, the *Hankle-Sample* court referenced *Calderone* v. *City of Chicago*, 979 F.3d 1156, 1164–65 (7th Cir. 2020). *Calderone*, unlike here, involved a plaintiff's contention that *facially constitutional* policies violated her Second Amendment rights. *Id.* The court specifically noted that, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary …." *Id.* (quoting *City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 824 (1985) (plurality opinion)).

[6] Shalak also alleges that Conyears-Ervin maintained final policymaking authority. The City asserts that the Commissioner of Human Resources or City Council are final policymakers for personnel matters under local law, not Conyears-Ervin. (Dkt. 26 at 7–8.) Shalak does not respond and has therefore waived the argument. *Alioto* v.

##   II.      First Amendment Retaliation Claim – 42 U.S.C. § 1983 (Count VIII)

Shalak alleges that defendants retaliated against her by terminating her for engaging in speech protected by the First Amendment. She identifies two categories of protected speech: (1) her filing of a formal complaint following the City's denial of her request to work from home due to pregnancy complications, and (2) her statements to Conyears-Ervin and Slack that she was uncomfortable soliciting funds from broker-dealers, coupled with her refusal to assist in the efforts.

To state a First Amendment retaliation claim under Section 1983, a plaintiff must allege that she (1) "engaged in activity protected by the First Amendment," (2) "suffered a deprivation that would likely deter First Amendment activity in the future," and (3) that "the First Amendment activity was at least a motivating factor in the Defendant's decision to take the retaliatory action." *145 Fisk, LLC* v. *Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (cleaned up) (citation omitted). "A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; and (2) addressed a matter of public concern." *Forgue* v. *City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). If the plaintiff "fails to establish either of these elements," they have no First Amendment cause of action. *Id.* "The determination of whether speech is constitutionally protected is a question of law." *Kubiak* v. *City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016).

Defendants contend that Shalak's speech is not protected by the First Amendment because she spoke "pursuant to her job duties, not as a private citizen." (Dkt. 26 at 12.) "[W]hen public employees make statements pursuant to their official duties, the employees are not

---

*Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[T]he rule that a person waives an argument by failing to make it … also appl[ies] … where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.").

speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Forgue*, 873 F.3d at 967 (quoting *Garcetti* v. *Ceballos*, 547 U.S. 410, 421 (2006)).

Shalak alleges that she asked to "work from home due to her disability" and filed a complaint after the City denied her request. (Dkt. 11 ¶¶ 18–19.) Such speech solely reflects "an employee's attempt to improve her work environment" and therefore is not protected under the First Amendment. *Kubiak*, 810 F.3d at 482; *see also Massaro* v. *New York City Dep't of Educ.*, 481 F. App'x 653, 656 (2d Cir. 2012) (concluding at summary judgment that plaintiff spoke as a public employee when her complaints "were aimed at resolving her health issues so that she could continue to teach, and ensuring that she had a safe and clean environment in which to work").

Shalak's hesitancy to solicit broker-dealers is similarly tied to her employment. Conyears-Ervin, "at all times relevant to this action[,] … had managerial authority and control over [Shalak's] employment." (Dkt. 11 ¶ 9.) Conyears-Ervin convened the meeting to "discuss the Treasurer's goals for 2023." (*Id.* ¶ 23.) She sought sponsorships "for a … summit … put on by the Treasurer's Office" and asked Shalak, Assistant City Treasurer and "Director of Strategic Alliances and Partnerships," to help. (*Id.* ¶¶ 13, 24.) Shalak, appearing to concede the point, does not respond to defendants' argument, nor does she dispute that her responsibilities included securing such sponsorships.[7]

Similarly unhelpful are Shalak's allegations that her job duties "involved very little contact" with broker-dealers and "did not include soliciting [them] for funds." (*Id.* ¶ 27.) Though

---

[7] Shalak focuses her briefing solely on whether her speech addressed a matter of public concern. *See Palmer* v. *Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192, 198 (W.D.N.Y. 2013) ("*Garcetti* made it clear that courts should not conflate the public-concern requirement with the private-citizen requirement.").

11

Shalak may have had valid concerns about the request, an employee's "good reason[] to refuse an order[] does not necessarily mean the employee has a cause of action *under the First Amendment* when he contravenes that order." *Davis* v. *City of Chicago*, 889 F.3d 842, 845–46 (7th Cir. 2018) (emphasis in original and quotation omitted). "Because [her] refusal was pursuant to [her] job duties," Shalak spoke as a public employee, not as a private citizen. *Id.* at 845.

Shalak accordingly fails to state a First Amendment retaliation claim. Because the court so concludes, Shalak's *Monell* claim also fails. *See Palka* v. *Shelton*, 623 F.3d 447, 455 (7th Cir. 2010) ("[B]ecause his complaint fails to state a claim for any constitutional violation, the City … cannot be held liable; a *Monell* claim requires a municipal policy or practice that results in a constitutional deprivation."). Count VIII is dismissed without prejudice.

### III. Retaliatory Discharge (Count IX)

Defendants argue that Shalak's common law retaliatory discharge claim against the City should be dismissed because it is barred by the one-year statute of limitations under the Illinois Tort Immunity Act, 745 ILCS 10/8-101. Shalak responds that "Illinois common law actions for retaliatory discharge are subject to a *five*-year statute of limitations." (Dkt. 31 at 9.) This theory is incorrect as a matter of law.

Under the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/8-101(a), "actions against local entities … have a one year statute of limitations (except in the case of injury or death)." *Klee* v. *McHenry Cnty. Coll.*, No. 15-CV-04813, 2017 WL 3168973, at *4 (N.D. Ill. July 26, 2017). "[T]he tort of retaliatory discharge is subject to the one-year statute of limitations under the Illinois Tort Immunity Act." *Dayton* v. *Oakton Com. Coll.*, 907 F.3d 460, 470 (7th Cir. 2018) (citing *Halleck* v. *County of Cook*, 637 N.E.2d 1110, 1113 (Ill. App. Ct. 1994)).

Shalak relies on *Zelman* v. *Hinsdale Township High School District 86*, No. 10 C 00154, 2010 WL 4684039 (N.D. Ill. Nov. 12, 2010), in support of her theory that the statute is governed by a five-year statute of limitations. *Zelman*, however, involved a retaliatory discharge claim brought under the Illinois Whistleblower Act, not Illinois common law. *Id.* at *1. Accordingly, *Zelman* "does not control whether [Shalak's] claim (which is not brought under the IWA) is time-barred. Illinois law plainly subjects a general retaliatory discharge claim against a governmental entity to a one year statute of limitations." *Klee*, 2017 WL 3168973, at *4.[8]

Shalak's reliance on *Smith* v. *Waukegan Park District*, 896 N.E.2d 232 (Ill. 2008) and its progeny is also unavailing. *Smith* interpreted § 2-109 of the Tort Immunity Act, "an entirely different section of the statute not related to the statute of limitations," and held that § 2-109 "provides public entities no immunity for retaliatory discharge based on the exercise of workers' compensation rights." *Finch* v. *Vill. of Sauk Vill.*, No. 24 CV 4608, 2025 WL 1310461, at *4 (N.D. Ill. May 5, 2025) (quoting *Smith*, 896 N.E.2d at 239); *see also Elue* v. *City of Chicago*, No. 16 CV 09564, 2017 WL 2653082, at *9 n.10 (N.D. Ill. June 20, 2017) (explaining that *Smith* "did not address whether the statute of limitations under § 8-101 of the Tort Immunity Act applied to retaliatory discharge claims"). The court therefore concludes that Shalak's common law retaliatory discharge claim is subject to a one-year statute of limitations under the Illinois Tort Immunity Act.

"A statute of limitations defense, while not normally part of a motion under Rule 12(b)(6), is appropriate where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an

---

[8] The out-of-district cases cited by Shalak also fail to persuade for this reason. *Ward* v. *City of Bloomington*, No. 13-1271, 2013 WL 12241836, at *5 (C.D. Ill. Nov. 22, 2013) (relying on *Zelman* and analyzing an Illinois Whistleblower Act claim); *Bogart* v. *Marron*, No. 16-CV-1088, 2016 WL 11689575, at *12 (C.D. Ill. Dec. 12, 2016) (collecting Illinois appellate court decisions interpreting the Illinois Whistleblower Act).

13

action is untimely[.]" *Andonissamy* v. *Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (quotation omitted). Here, Shalak alleges that the City terminated her employment on April 28, 2023, but she did not file the instant case until May 14, 2024—more than a year later. Her claim is therefore time-barred and the court grants defendants' motion to dismiss Count IX with prejudice.

IV. **National Origin and Race Discrimination (Counts IV and V)**

Defendants also move to dismiss Count IV, national origin discrimination under Section 1983, and Count V, race, ethnicity, and ancestry discrimination under Section 1981. Shalak, in her response, concedes that she will voluntarily dismiss Counts IV and V. Defendants accordingly request dismissal with prejudice. Because the court makes no determination on the merits, however, it declines this invitation. *See Lennon* v. *City of Carmel*, 865 F.3d 503, 509 (7th Cir. 2017) ("[A] dismissal with prejudice … operates as a disposition on the merits"). Defendants' motion to dismiss Counts IV and V is granted without prejudice.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to dismiss (dkt. 25) is granted in part and denied in part. The court denies defendants' motion to dismiss Count III. The court grants defendants' motion to dismiss Counts IV, V, and VIII without prejudice. Count IX is dismissed with prejudice. A scheduling conference is set for August 20, 2025 at 9:30 a.m. in courtroom 2201.

Date: August 7, 2025

_____
U.S. District Judge Joan H. Lefkow